PER CURIAM:
This claim was filed December 21, 1966, with the Attorney General of West VAginia. No hearings thereon were held by the Attorney General and the claim was transferred, with others, to this Court upon its creation by the West Virginia Legislature, effective July 1, 1967. The case was originally set for hearing on November 2, 1967, but was continued at the request of the claimant because of the unavailability of certain witnesses who were out of the country, the respondent not objecting to the motion for continuance. Testimony in this case was taken, and other evidence submitted on May 24 and May 28, 1968.
Claimant entered into a written contract with the State Road Commission of West Virginia, dated September 8, 1958, calling for the grading and draining of 33,538 lineal feet of construction on Interstate Route 64, designated as Project No. 1-64-1 (9) 13.
This claim embraces four separate items, described briefly as follows:
(1) $47,532.45 as payment for 32,781 cubic yards of special rock fill at the contract unit price of $1.45 per cubic yard. It is the respondent’s contention that this rock fill was not actually put in place, based upon core drilling or boring conducted by the State;
*57 (2) $36,360.96 as payment for 35,648 cubic yards of unclassified excavation, at the contract unit price of $1.02 per cubic yard. It is the respondent’s contention that this excavation was not in fact done or this material removed inasmuch as the rock fill referred to above was not placed;
(3) $22,032.00 as payment for the removal of 21,600 cubic yards of material as unclassified excavation, at the contract unit price of $1.02 per cubic yard. Respondent agrees this 'amount of material was removed but contends the claimant is not entitled to payment because it accumulated as a result of “overblasting” on the part of the claimant and not as a result of sluffing or slides as alleged by claimant;
(4) $11,947.32 representing the difference claimant was to be paid for additional work in relation to culvert installation and excavation per a written contract entered into by claimant, the respondent’s project Engineer Fryer, and claimant’s subcontractor Turman after the problem arose during construction. Respondent contends Fryer had no authority to bind the State in any regard and claimant was paid for the work in accordance with the project contract rate ($1.02) and that the agreement rate ($3.00) is void.
Claimant and respondent agree this project was governed by the “Standard Specifications, Roads 'and Bridges, Adopted 1952,” commonly called “Blue Book.”
Respondent further agrees that the sum of $20,213.34 is owed to claimant in accordance with the final estimate on this project, and that this sum is in addition to, and not involved in, the claim here considered.
As to items (1) and (2) of this claim, this project required the installation of an underwater “keyway” of stone to stabilize the filled roadbed upon which Interstate 64 was to be constructed. Installation of this special stone fill keyway required underwater excavation by the claimant. No cross sections relating to quantities of excavation or fill were made as this work was done. The claimant’s evidence was that 264,000 cubic yards of stone were delivered by its hauling contractors to this project, the quantity being based on a “truck count” admittedly not generally acceptable for payment purposes. Respondent, to obtain records to substantiate final estimate payment, conducted core borings and drillings in the “keyway” area in question, and paid the claimant where the drilling *58 indicated “fill material . . . boulders or rock.” Transcript, Volume II, page 105. Respondent offered claimant the opportunity to conduct similar tests but it declined. Claimant has been paid for 226,990 cubic yards of rock fill and its attendant excavations based upon the corings and while these tests may not have been perfect, no evidence of similar nature was offered to refute these findings. It is our opinion the claimant has failed to establish its claim for items (1) and (2) by a preponderance of the evidence.
As to item (3), it is agreed this 21,600 cubic yards of material was removed by claimant. While the respondent offered some evidence that this material resulted from “overblasting,” it is our opinion claimant’s evidence preponderates in this regard in its contention that this was more likely to be slides and sluffing due 'to the soil conditions, the winter exposure, poor slope design, and the fact that “overblasting” results in rather immediate falls and there is no considerable delay in effect. We find that $22,032.00 should be allowed for this item.
As to item (4), it is our opinion the Blue Book specifications governing this job (Section 1.1.4) authorized the State Project Engineer Fryer to enter into this agreement for the work to be performed. Respondent admits it was work beyond the scope of the contract that was not anticipated, that claimant did the work, and that in doing it in the manner agreed upon was economically beneficial to the State. We find that $11,947.32 should be allowed on this item.
To conclude, the Court hereby awards the claimant the sum of $33,979.32.
Claim allowed in the amount of $33,979.32.